UNITED STATES v. PORTLAND COAL & COKE CO. et al. (six cases).

(Circuit Court, W. D. Washington, W. D.   October 5, 1908.)

Nos. 1,280–1,285.

MINES AND MINERALS (§ 35*)—ENTRY OF COAL LANDS—VALIDITY.

Under Rev. St. § 2347 (U. S. Comp. St. 1901, p. 1440), which permits the entry of coal lands by a qualified person or association, but in case of a person not exceeding 100 acres, and in case of an association not exceeding 320 acres, persons cannot lawfully associate themselves together to enter tracts of 160 acres each in severalty, but to be held for the joint benefit of all in equal shares, and patents issued on entries made under such an agreement will be canceled at suit of the United States.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 87; Dec. Dig. § 35.*]

In Equity. Suits by the United States against the Portland Coal & Coke Company and others for cancellation of patents. Decree for complainant.

Charles J. Bonaparte, Atty. Gen., Henry M. Hoyt, Sp. Asst. U. S. Atty., Potter C. Sullivan, U. S. Dist. Atty., and Frederick G. Dorety, Asst. U. S. Dist. Atty.

Snow & McCamant, Warren E. Thomas, and T. G. Hailey, for defendants.

HANFORD, District Judge. In these six cases the government sues to obtain decrees canceling patents issued for lands entered under the coal land law, which permits entries by individuals of not exceeding 160 acres, and by associations of not exceeding 320 acres, of public land containing coal deposits and chiefly valuable for coal mining. The several bills of complaint are similar in their allegations, and, considered together as one general complaint, they show that separate entries were made by individuals and associations, each of a quantity of land not exceeding the maximum, and that the lands were paid for and patents issued to the persons in whose names the entries were made; the aggregate quantity of land so patented being about 6,300 acres. As ground for cancellation of the patents it is averred that the entries were made in pursuance of a conspiracy between the defendants to acquire the title to a large tract of coal land, in violation of law, for the use and benefit of the Oregon Railroad & Navigation Company, a corporation, and that to effect the object of the conspiracy the Portland Coal & Coke Company was incorporated as a subsidiary corporation, dominated by the Oregon Railroad & Navigation Company, and that the money expended in exploring the lands for the discovery of coal, and all other incidental expenses, and for the payment to the government of the price for the lands, was furnished by the Oregon Railroad & Navigation Company.

A number of the defendants have failed to answer or plead, and decrees pro confesso have been entered against them, and all of the cases have been submitted by the United States district attorney for decision upon the bills and the several answers filed by the Oregon Railroad & Navigation Company, E. E. Lytle and wife, and McKenzie and Goss. Some of the other defendants filed answers disclaiming any interest in the property, and as to them the suits have been dismissed. The Portland Coal & Coke Company has not answered, and it appears to have ceased to exist as a corporation by reason of its failure to pay the license fee required by the laws of Oregon, under which it was incorporated.

The answer of the Oregon Railroad & Navigation Company is defensive only, to the extent of denying all averments of the bills charging it as a promoter of the Portland Coal & Coke Company and as a co-conspirator with others to acquire the land, and disclaims any right to or interest in any part thereof, and prays for a decree in its favor for costs.

The defendants Lytle and wife, by their answer, deny the ownership of the government subsequent to the issuance of patents, "except

as this court may hold that, by reason of an unintentional violation of the laws of the United States, the title of the complainant * * * was never divested." This is a negative pregnant, equivalent to an admission that the entries were unlawful and that the patents did not convey a valid title. The answer of these two defendants controverts the charges of conspiracy and fraudulent design contained in the bills of complaint, but expressly admits that a number of individuals and associations made coal land entries aggregating about 6,300 acres, and that there was an understanding between them to the effect that all were to co-operate together in developing and exploiting the property as an entirety, and contribute to the general expenses, and share in whatever profits might be realized, and aver that they acted under legal advice, and believed that such a combination was not unlawful, and that the Portland Coal & Coke Company "was organized solely for the purpose of carrying out the pooling arrangement above referred to." They further aver that the land was all paid for out of money contributed by the several entrymen and deposited in the Merchants' National Bank of Portland, Or., to the credit of the Portland Coal & Coke Company, and they admit that the defendant E. E. Lytle claims an interest in the land by virtue of deeds executed by the several entrymen subsequently to the issuance of the patents.

In case No. 1,280 the defendants McKenzie and Goss by their answer deny all the charges of conspiracy and fraud, deny that there was an agreement, preceding the entry made in their names, binding them to convey the title or hold it in trust, and deny that the United States has had any right to or interest in the property subsequent to the issuance of the patent to them. They admit, however, that coal land aggregating about 6,300 acres was entered as alleged in the bill of complaint, and that it was their "expectation * * * that the lands * * * should be developed and exploited at the joint expense of the entrymen thereof, and that the proceeds of all mineral extracted or taken therefrom and sold should be used for the payment of the expense of development and exploitation, and for the payment of the expense of operation, and that when said lands should have been entered, * * * and title therein vested in the several entrymen, * * * the said lands * * * should be developed and exploited, and the mines thereon operated for the benefit of all of said entrymen share and share alike." They further aver that the land covered by the entry made in their names was paid for with money furnished by the defendant E. E. Lytle, and that the deed which they executed was intended as security for the repayment of said money, and that it has all been repaid, except $200, and that Lytle has now no interest in said land, except as security for said balance. They also aver that they acted under the advice of counsel, and believed, and now believe, that a combination of individuals for the purpose of co-operation in acquiring and operating coal-mining property at the joint expense of all, and for the sharing of profits equally, is not contrary to law.

Considered in its entirety, this answer is a virtual confession that they, the answering defendants, voluntarily associated themselves with others to acquire tracts of land in severalty, but to be held for the joint

benefit of all in equal shares, and the only actual opposition to the granting of the decrees demanded by the government is this contention of these two defendants that the pooling scheme above outlined is not contrary to the statute. Their solicitors have failed, however, to sustain this contention by any argument, and it is the opinion of the court that it cannot be sustained. If the scheme was not unlawful, each member of the combination would have a legal right to compel his fellow members to hold each and every tract for the benefit of all, and to have an accounting of all profits derived from mining operations in each and every tract, although the legal title might be retained by the individual members in severalty. So that the object of the combination was to acquire coal land in excess of 320 acres for an association, although the law fixes the maximum quantity at 320 acres.

For the reason above stated, and upon the authority of the decision of the Supreme Court in the case of United States v. Trinidad Coal & Coking Co., 137 U. S. 160, 11 Sup. Ct. 57, 34 L. Ed. 640, decrees will be entered in each of the cases as prayed for in the several bills of complaint, except that costs will not be decreed against the Oregon Railroad & Navigation Company, or either of the other defendants who have disclaimed any interest in the property. Judgments in their favor for costs will be denied, for the reason that the government is not liable to defendants for costs.